ORDER REGARD1SG FOREIGN JUDGMENT

Wilson D. BROTT, Chief Judge.
Petitioner Members Credit Union brought this case seeking to have its for *184 eign judgment issued by the 86th District Court, State of Michigan, against Respondent Pearly Alhameed recognized by the Grand Traverse Band Tribal Court pursuant to Chapter 10 of the Grand Traverse Band Tribal Court Rules. Chapter 10 state the rules of enforcement and recognition of foreign judgments by the Tribal Court.

COURT PROCEDURE FOR RECOGNITION OF FOREIGN JUDGMENTS

In general, the judgments, decrees, orders, warrants, subpoenas, records, and other judicial acts of a Michigan State Court are recognized and have the same effect and are subject to the same procedures, defenses, and proceedings as those issued by the Tribal Court. GTBCR 10.101(A). Such judgments, decrees, etc. issued by Michigan courts are presumed to be valid. GTBCR 10.101(C). In order to overcome that presumption as to a Michigan Court judgment, the objecting party must demonstrate one of the grounds stated in GTBCR 10.101(C)(1) or (2), or GTBCR 10.206. The Michigan Supreme Court has adopted a similar rule with respect to Tribal Court judgments. See MCR 2.615, which contains nearly identical language to GTBCR 10.101.
The procedure for registering a foreign judgment with the Tribal Court is spelled out in GTBCR 10.201, et seq. First, a person seeking enforcement of the foreign judgment must file a copy of the foreign judgment, which has been authenticated by the clerk of the foreign court as spelled out in GTBCR 10.202(A). Second, the person seeking enforcement of a foreign judgment (or their representative) must file an affidavit complying with GTBCR 10.202(B). Finally, the person seeking enforcement must pay the appropriate filing fee. GTBCR 10.202(C). After these three things have been accomplished, the Tribal Court must mail notice of the filing of the same with along with a copy of the foreign judgment, attestation and affidavit referenced in Rule 10.202 to the Respondent/judgment debtor at the address provided by the judgment as required by GTBCR 10.203. The judgment debtor has 28 days to file written objections to the enforcement of the foreign judgment. GTBCR 10.204. If written objections are filed, a hearing is scheduled before a Tribal Court judge where the judgment debtor will be required to demonstrate cause why the foreign judgment should not be enforced by the Tribal Court. Id. At the hearing, after reviewing all the relevant evidence concerning the foreign judgment, the Court shall issue an order either granting or denying enforcement of the foreign judgment. Id. If no objections are filed, within 28 days, the Court shall issue an order granting enforcement of the foreign judgment. GTBCR 10.205.
The Court rules provide specific grounds for non-recognition of a foreign judgment, which are stated in GTBCR 10.206, as well as 10.101(C)(1) and (2) [as to Michigan court judgments], 10.102(B)(1) and (2) [as to Tribal Court judgments], and 10.103(C)(1) and (2) [as to Federal Court and other State Court judgments].
This Court takes judicial notice that the Tribal Court has for many years followed a procedure whereby if the petitioner/judgment creditor with a foreign judgment follows the procedure of filling out the Tribal Court forms and having a foreign money judgment recognized by this Court, then the Tribal Court will order that any amounts remaining due on the foreign judgment be deducted from the respondent/judgment debtor’s next available per capita distribution, and each successive distiibution until paid in full.

*185
FACTS

In this case, Petitioner (judgment creditor) Members Credit Union filed an Affidavit of Judgment Holder Creditor, along with a certified copy of a Judgment dated August 11, 2008, issued in a civil matter by the 86th District Court, State of Michigan, in the amount of $6,101.72. Respondent (judgment debtor) Pearly Alhameed was mailed a Notice of Registration and a Notice of Opportunity to Object by the Court on November 10, 2008. The Notice of Registration mailed by the Clerk in this case provides substantially as follows:
1. Notice is hereby provided to you that the filing of a judgment against you has been registered with this Court on Tuesday, November 4, 2008 and a copy of this judgment is attached to the Certification of Records/Attestation of Exemplified Copies, along with the Affidavit of said Judgment Holder/Creditor. A copy of said Certification and Affidavit are attached to this notice.
2. The name and post office box of the lawyer or lay advocate represented the judgment holder/creditor and/or the judgment holder/creditor is: George Broad, 750 Broad Road, Traverse City, MI 49682 (sic).
3. An ORDER entering the enforcement of this judgment, which was rendered against you, shall be entered by this Court within twenty-eight (28) days of the same having been served upon you unless you, as judgment debtor, file written objections stating the grounds on which you are objecting, with the Court along with a request for hearing on the same within said twenty-eight (28) day period. At such hearing, you will be required to show cause why the Foreign Judgment should not be enforced by this Court. The entry of such an order enforcing this judgment by this Court shall entitle the judgment holder/creditor to enforce its judgment against you in any manner currently available for judgment holders/creditors in the Tribal Code.
The Notice of Opportunity to Object provides substantially as follows:
The attached Notice of Registration has been entered. Also attached are Affidavit of Judgment Holder/Creditor, Certification of Records/Attestation of Exemplified copies, and Certified copy of the State Court Judgment. To contest this, you must file an objection in wilting to the Grand Traverse Band Tribal Court within twenty-eight (28) days of receiving the attached documents. The written objection must include the reasons why you are objecting and a request for a hearing to show' why this Court should not enforce the income withholding. See the attached page for situations applicable to overcome the presumed validity of the withholding order according to GTB Court Rule 10.100. Enforcement and Recognition.
If you do not make a written objection within 28 days, you next Per Capita distribution will be forwarded to the plaintiff for the amount of the state court judgment. A $100.00 GTB Court Administration Fee will also apply each time per cap is accessed, pursuant to the Grand Traverse Band Revenue Allocation Ordinance Number 00-003 and Grand Traverse Band Tribal Court Rules Regarding Enforcement and Recognition of Foreign Judgments.
On December 8, 2008, Respondent filed an Objection and Request for a Hearing. Oral Arguments were heard from the parties on February 12, 2009, and the Court issued an order inviting the Grand Traverse Band to file a written response. The *186 Tribe did file a written response to the motion, and Respondent filed a Reply to the Tribe’s Response.

ARGUMENTS BY THE PARTIES

Respondent argues that the foreign judgment is not enforceable or is non-recognizable because the judgment was obtained by fraud, the court lacked personal jurisdiction, and the cause of action on which the judgment is based provides a situation where granting enforcement and recognition would result in a Tribal Court order that is repugnant to Tribal law, citing GTBCR 10.206.
Further, Respondent argues that the procedure to register a foreign judgment is insufficient to effect a garnishment of Respondent’s per capita distribution; that Petitioner only requested registration, not garnishment; and that a new cause of action must be filed.
Finally, Respondent argues that the statutory scheme of the Revenue Allocation Ordinance does not give the Tribal Court authority under 18 GTBC § 1601 et seq., (also known as the Revenue Allocation Ordinance or “RAO”) to order garnishment of Petitioner’s per capita distributions. 18 GTBC § 1610 states:
The Tribal Court shall establish a program to ensure that, if the Tribal Court has knowledge that any recipient of a per capita benefit is delinquent with respect to a valid existing GTB Tribal Court Order establishing liability of the recipient as a result of a Tribal Court action, then the Tribal Court shall receive satisfaction of the Tribal Court’s outstanding claim prior to distribution of such benefit under this RAO. Nothing in such program shall create any duty, financial obligation, or liability on the part of the Tribal Court or the Tribal government to any third party obligee or party obligee. Obligations from per capita trust will be paid five (5) working days subsequent to distribution.
Also relevant to the arguments made in this matter is 18 GTBC § 1611(a) which states:
(a) Except for the members for whom per capita benefits are being contributed to trusts pursuant to § 1605(e), or set aside for future payment under a deferred benefit plan pursuant to § 1605(f) or (g), and except for the members subject to the requirements of § 1609 (“Child Support Obligations”), and § 1610 (“Tribal Court Orders”), the per capita benefits for any qualified Tribal member shall be mailed to the last known address of the member on file with the GTB Tribal enrollment office unless the Tribal member has timely filed a notarized “Per Capita Direct Deposit Form” with the per capita officer to receive per capita benefits in a direct deposit transaction into the Tribal members’ personal bank account. The direct deposit program for per capita benefits is strictly voluntary and Tribal members are not obligated to enroll into the program. The burden of registration with the GTB Tribal enrollment office is with the member to ensure that the enrollment office has the member’s correct and current address or correct information as stated on the “Per Capita Direct Deposit Form” including the account number and routing number of the bank account and proper verification the Tribal members’ name is on the bank account. Nothing in such program shall create a duty of financial obligation or liability on the part of the Tribe to any support obligee or third party. (Emphasis added).
Respondent argues that 18 GTBC § 1610 and § 1611 only allow the Tribal Court to order garnishment of per capita under limited circumstances, such as when *187 the Tribal Court is the claimant (as for fines and costs in a criminal case, for example).
Petitioners deny the allegations that the foreign judgments was obtained by fraud, that the foreign court lacked personal jurisdiction, or that enforcing the judgment would result in a Tribal Court order that is repugnant to Tribal law. Petitioners also rely upon the Tribal Court rules cited above, as well as the Court’s past practice of ordering the amounts due on foreign judgments to be deducted from the respondent/judgment debtor’s per capita distributions.
The Tribe argues that the RAO should be read as a whole, and that other provisions within the RAO such as 18 GTBC § 1607, authorizing tribal members to establish loan relationships with private lending institutions and pledge their future per capita distributions (through consent judgments issued by the Tribal Court) to repay the loan, and that these provisions are inconsistent with the strict reading of the RAO proposed by Respondents.
Further, the Tribe points to the fact that there it has long been the practice of the Tribal Court to attach per capita distributions of Tribal Members beyond obligations owed directly to the Court, such as money owed to other departments within the Tribe, including monies owed to the GTB Housing Department, Fisher loans, money owed to the Automotive Department, minor trust loans, as well as the current procedure that has been followed by the Court concerning foreign judgments. The Tribe argues that it would not be in the Tribe’s best interest and against public policy to interpret the provisions of 18 GTBC § 1610 and § 1611 as narrowly as Respondent would suggest.
Finally, the Tribe points out that the foreign judgment court rules of the Tribal Court should be read in conjunction with the Michigan Court Rules, specifically MCE 2.615, which is essentially a reciprocal agreement between the Tribal Court and the Michigan Courts for enforcement of each other’s properly issued court orders. Prior to the enactment of these reciprocal court rules, the Tribe argues, trying to get tribal judgments recognized in state court was arduous process, and there was reluctance from the State Courts unfamiliar with the law concerning Indian tribes to grant Tribal judgments full faith and credit.

DECISION

First, with respect to the Respondent’s argument that the foreign judgment is not enforceable or is non-recognizable because the judgment was obtained by fraud, the court lacked personal jurisdiction, and/or the cause of action on which the judgment is based provides a situation where granting enforcement and recognition would result in a Tribal Court order that is repugnant to Tribal law, this Court finds that Respondent has provided no proof, nor any detailed facts in support of these allegations. There is no evidence of any fraud in connection with the foreign judgment, nor that the 86th District Court lacked jurisdiction over Respondent, nor that recognizing the foreign judgment would be repugnant to Tribal law. The burden is upon the Respondent to overcome the presumption of validity of the State of Michigan judgment. GTBCR 10.101(C); allegations without any substantiation will not overcome that presumption.
Further, Respondent argues that the procedure to register a foreign judgment is insufficient to effect a garnishment of Respondent’s per capita distribution; that Petitioner only requested registration, not garnishment. Petitioner appeared to have *188 agreed that it has not separately filed for garnishment, waiting instead to determine if its judgment will be recognized by this Court; however, Petitioner also requested during oral arguments that the judgment be recognized and that this Court order garnishment of Respondent’s per capita distribution. Whether garnishment should be requested separately is an issue which will be dealt with below.
Finally, as to the Court’s authority under the Revenue Allocation Ordinance, the issue hinges on the interpretation of 18 GTBC § 1610 and § 1611, in conjunction with GTBCR Chapter 10. Respondent suggests the language of § 1610 limits the Tribal Court, to enforcement of obligations owed directly to the Tribal Court, when it states: “The Tribal Court shall establish a program to ensure that, if the Tribal Court has knowledge that any recipient of a per capita benefit is delinquent with respect to a valid existing GTB Tribal Court Order establishing liability of the recipient as a result of a Tribal Court action, then the Tribal Court shall receive satisfaction of the Tribal Court’s outstanding claim pri- or to distribution of such benefit under this RAO.” (Bold and italics added). However, as noted above, that interpretation is inconsistent with Tribal Court practice. Routinely, the Tribal Court has enforced foreign judgments once recognized and ordered the outstanding balance of the judgment deducted from the respondents’ per capita distributions. In essence, once the foreign judgment has been deemed to be valid, it has been treated just as if the judgment were generated in the Tribal Court. In other words, the Court would treat the foreign judgment as though it were “the Tribal Court’s outstanding claim,” which in turn triggered the authority for per capita garnishment pursuant to 18 GTBC § 1611.
It has come to this Court’s attention that a narrower interpretation of 18 GTBC § 1610 was reached by the Tribal Appellate Court concerning interpretation of this statutory provision. In the case of Williams v. Martel, -— Am. Tribal Law ——, -, 1998 WL 35289051, *3 (1998), the Tribal Court implicitly held that 18 GTBC 1610 [1] gave the Tribal Court authority to utilize per capita distributions to pay outstanding foreign judgments. However, on appeal the Tribal Appellate Court interpreted 10 GTBC § 1610 more narrowly. Williams v. Martell, Tribal Appellate Court Case No. 97-01-01-CV-AP, Appellate Opinion, dated July 19, 1999. The issue in Williams centered on the interplay between then Section 1605(j) (since repealed) which declared any incarcerated individual as legally incompetent for purposes of per capita distributions and required such distributions to be placed into trust. The Tribal Appellate Court in Williams stated at pp. 2-3:
The conflicting Section [1610] must be interpreted to make sense with the entire Ordinance. This court will not interpret a Tribal law unless it has a conflict or ambiguity on its face. There is a conflict here. There was a clear intent to protect tribal members’ incomes, but with limits set by debated policy that resulted in the Ordinance being written and revised with stringer (sic) protections. A result that is distasteful to the court must be enforced if it meets the intention of the law and is not clearly repugnant to Tribal traditions or its Constitution.
Section 1608 [now 1610] seems to refer to child support or fines that are *189 owed to the Tribe. It refers to “the Tribal Court’s outstanding Claim” as having priority over a trust distribution. The Section would make sense with the balance of the Ordinance if the Section were read to allow the Tribal Court to obtain per-eapita funds to satisfy the Tribal Court’s “outstanding claims” not a Plaintiffs outstanding claims. Otherwise, all claims could be satisfied and Section 1605 would not make sense of (sic) have any meaning.
This court interprets Section 1608 [now 1610] as referring to Child Support, Spousal Support, and money owed to Court or to the Grand Traverse Band itself as a judgment, fines, costs or penalties. This would not include a Judgment on behalf of any other creditor, except for where it is based upon another Court’s Order for Child Support, or Spousal Support. This interpretation allows Sections 1605 and 1608 [1610] to be read together and to both have meaning.
The Williams Court focuses on the same language in § 1610 that Petitioner focuses on in this case. However, the opinion in Williams dealt primarily with the issue of incarcerated trusts, principles of fiduciary duties and the protection of the trust corpus, and in that context whether the Tribal Court could order that money be attached that was either destined to be placed into trust or was already in trust. Therefore, this Court finds that the holding in Williams is distinguishable as the interpretation of the statute was made in different context. Unlike in Williams, This case does not involve trust issues or the invasion of the trust funds to pay a foreign judgment. Furthermore, the practice of this Court for many years treating foreign judgments as though they were generated by this Court supports this interpretation of Williams as being limited to incarcerated trust cases.
While rules of statutory construction require this Court to interpret 18 GTBC § 1610 in such a way as to give it plain meaning, the meaning of the statute is not clear as written. The tribal courts will not interpret tribal statutes unless they are ambiguous. Id. The Court finds that the language of 18 GTBC § 1610 can be interpreted in multiple ways, therefore it is ambiguous. This Court holds that the language of 18 GTBC § 1610 supports the Tribal Court’s withholding from per capita distributions to enforce Tribal Court judgments and orders (foreign or otherwise). Section 1610 states that “if the Tribal Court has knowledge that any recipient of a per capita benefit is delinquent ■:with respect to a valid existing GTB Tribal Court Order establishing liability of the recipient as a result of a Tribal Court action, then the Tribal Court shall receive satisfaction of the Tribal Court’s outstanding claim prior to distribution of such benefit under this RAO.” Implicit in the statute, and consistent with the Tribal Court’s actions (unchallenged until now) over a long period of time, is a finding that a judgment or order, by virtue of being issued by the Tribal Court is a “GTB Tribal Court Order establishing liability of the recipient as a result of Tribal Court action.” This Court reads the subsequent language in § 1610 concerning “the Tribal Court’s outstanding claim” to refer to the Tribal Court order mentioned earlier in the sentence, rather than to refer to a limitation to only allow withholding for obligations owed to the Tribal Court. Similarly, the Court interprets “Tribal Court action” as meaning any case filed in the Tribal Court, rather than to mean obligations imposed by action of the Tribal Court, such as, for example, the imposition of fines and costs by the Court in a criminal or juvenile case.
When the Tribal Court issues an order recognizing a foreign judgment, it is issu *190 ing a “GTB Tribal Court Order establishing liability of the recipient as a result of a Tribal Court action.” Therefore, the Tribal Court has authority under 18 GTBC § 1610 and § 1611 to order withholding from per capita distributions to pay a foreign judgment creditor where the foreign judgment has been recognized by this Court.
The remaining issue is whether the Tribal Court has authority to order withholding from per capita as part of the procedure for recognition of a foreign judgment. Recognition of a foreign judgment means that this Court will give that judgment full faith and credit, and will issue orders to enforce it as required under Chapter 10 of the GTB Court Rules. Garnishment, on the other hand, is but one of many collection tools available to a judgment creditor (such as execution, repossession, etc.). A careful review of Chapter 10 provides no provision or authority for the automatic garnishment/withholding from per capita proceeds upon recognition. Rather, the stated goal of Chapter 10 is to recognize the foreign judgment and to give it full faith and credit under the laws of the Grand Traverse Band of Ottawa and Chippewa Indians. Garnishment or per capita withholding is not a necessary result following recognition of a foreign judgment. Other remedies are also available to a petitioner/judgment creditor once the judgment is recognized. A petitioner/judgment creditor may utilize any collection measures which would go along with that recognition that are authorized by law.
Notwithstanding the above, the Tribal Court has for many years accommodated foreign judgment petitioners/judgment creditors by treating requests for recognition of foreign money judgments as concurrent requests for per capita withholding, Given the holding of this Court above that the Tribal Court has authority to order withholding of per capita funds to pay the foreign judgment, the issue is more one of notice to the respondent/judgment debtor and due process. As noted above, the Notice of Opportunity to Object generated by the Court puts the respondent/judgment debtor on notice that his/ her per capita distribution will be forwarded to the judgment creditor in the amount of the judgment. This Court has often received objections to foreign judgments on the basis of the withholding, as opposed to challenging the validity of the foreign judgment, thus it appears clear that respondents/judgment debtors frequently understand the implications of the notice. When timely objections are received from judgment debtors, the matters are scheduled for a hearing, and the respondent/judgment debtor is given notice and an opportunity to be heard. Therefore, although the forms issued by the Tribal Court, should be modified to make it more clear to the respondent/judgment debtor that his/her per capita distribution may be subject to withholding as part of the foreign judgment proceeding, this Court is satisfied that the public is aware of the potential for per capita withholding given how long the procedure has been in place, and the respondentíVjudgment debtors are put on notice in the paperwork they receive as well. Therefore, the Court finds no due process violations in the procedure used by the Court.

CONCLUSION AND ORDER

For the reasons stated above, Respondent’s objection to the registration of the foreign judgment is denied, and Petitioner’s request to register the foreign judgment for the purposes of enforcement of the same is hereby granted. Consistent with the above, the Court further orders that the Respondent, Pearly Alhameed *191 (TID #989; DOB: 7/6/1956) shall pay from the December 2009 per capita distribution and/or each future per capita distribution until paid in full, the sum of $6,101.72 to Petitioner, Members Credit Union, P.O. Box 795, Traverse City, MI 49685. In addition to this amount, a $100.00 administrative fee will be applied each time per capita, is accessed.
IT IS SO ORDERED.

. At the time the Williams opinions were issued, 10 GTBC § 1610 was § 1608 of the Revenue Allocation Ordinance.